**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FARID AHMAD, | |
| Plaintiff, | Civil Action No.: 12-6104 (MAS) |
| v. | **OPINION** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court on Farid Ahmad's ("Plaintiff") appeal from the final decision of Michael Astrue, now Carolyn Colvin, Commissioner of the Social Security Administration (the "Commissioner"), denying Plaintiff's request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, this matter is remanded for further proceedings consistent with this Opinion.

## I.     OVERVIEW

### A.     Procedural History

Plaintiff filed an application for DIB on April 20, 2006, alleging disability beginning on January 1, 2003. (AR 115.)[1] The claim was denied. Upon reconsideration, the claim was again denied. On March 30, 2009, the Administrative Law Judge (the "ALJ") conducted a hearing. (*Id.*

---

[1] For ease of reference, this Opinion will cite to the page numbers of the Administrative Record ("AR") (ECF No. 4), located at the bottom right-hand corner of the pages. If the numbers are unclear, this Opinion will cite to the PageIDs at the top right-hand corner of the pages.

at 72-99.) After the hearing, the ALJ issued a decision, dated May 29, 2009, finding that Plaintiff was not disabled. (*Id.* at 103-10.) On February 11, 2011, the Appeals Council remanded the case to the ALJ with instructions. (*Id.* at 113-14.) Upon remand, the ALJ conducted a supplementary hearing on May 25, 2011. (PageID 45-85.) On June 20, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 10-23.) The Appeals Council denied Plaintiff's request for review on August 13, 2012. (*Id.* at 1-3.) On September 28, 2012, Plaintiff filed the instant appeal. (Pl.'s Compl., ECF No. 1.) Plaintiff asserts that the ALJ, and subsequently the Commissioner, erred in determining that Plaintiff was not disabled by: (1) erring in determining Plaintiff's disability onset date; (2) failing to accord appropriate weight to the treating physician's opinion regarding the onset date; and (3) failing to evaluate Plaintiff's subjective complaints properly. (Pl.'s Moving Br. 2[2], ECF No. 5.)

**B.      Background**

Plaintiff was born on April 2, 1956. (AR 201.) He owned and operated a fast-food restaurant in Newark, New Jersey from 1977 to 2002. (*Id.* at 78.) His date last insured ("DLI") was December 31, 2007. By that time, he was 51 years old. (*Id.* at 115.) He has a high school education and is able to communicate in English. (*Id.* at 76.) Plaintiff's disability arises from his diabetes diagnosis.

**1.      Plaintiff's Medical Treatment**

Plaintiff received treatment for a number of medical conditions. He received treatment for insulin-dependent (type II) diabetes mellitus, with which he was diagnosed in 1987. (*Id.* at 340.) Plaintiff also received treatment for anemia. A June 29, 2005 report stated that Plaintiff's anemia was multi-factorial, likely iron-deficiency anemia plus chronic renal insufficiency. (*Id.* at 368.) On August 6, 2006, Plaintiff was evaluated for possible placement on the kidney transplant

---

[2] Plaintiff failed to insert page numbers in his brief. The Court numbered the pages instead.

list. (*Id.* at 414.) Plaintiff's diagnoses also included proliferative diabetic retinopathy in both eyes. (*Id.* at 288.) A report from Dr. Wisotsky stated that Plaintiff was a diabetic noted to have visual reduction and diabetic hemorrhaging. (*Id.*)

Plaintiff was diagnosed with hypertension in 2003. In addition, Plaintiff was diagnosed with an ulcer, gastritis and gastroesophageal reflux disease. A February 27, 2006 report from Dr. Shapiro, a gastroenterologist, indicated that Plaintiff had a hiatal hernia, an ulcer at the gastroesophageal junction, and possible barrett's esophagus. (*Id.* at 348.) Dr. Shapiro's March 14, 2006 report further indicated that Plaintiff had a history of GERD and had esophageal ulcers. (*Id.* at 344-45.)

The Administrative Record reflects that Plaintiff took many medications over the years to manage his various conditions. For example, according to a December 20, 2005 report from Dr. Shapiro, Plaintiff's medications included: Neurontin, Vytorin, Mavik, Coreg, Tums, insulin, Reglan, Lantus, Humalog, and Lasixt. (*Id.* at 351.) Plaintiff also received Procrit injections once a week for his anemia. (*Id.* at 389.) In addition, he received various medications for his diabetes and other conditions, including: Diovan, Nexium, Requip, Hydroxyzine, Crestor, etc. (*Id.* at 95, 389-90.)

The Administrative Record also reflects that Plaintiff had numerous complaints, which include the following examples. An August 8, 2003 report stated that Plaintiff complained of bilateral edema in his legs. (*Id.* at 372.) A May 24, 2004 eye examination reflected Plaintiff's complaints of flashes, floaters and pain. (*Id.* at 283.) A May 7, 2005 report reflected Plaintiff's complaint of a long duration of obstructive sleep apnea. (*Id.* at 329.) A June 29, 2005 report stated that Plaintiff had weakness, shortness of breath and cough with suspected pneumonia. It also stated that Plaintiff was found to be profoundly anemic. (*Id.* at 368.) A November 23, 2005

report mentioned that Plaintiff had problems sleeping. (*Id.* at 355.) Dr. Shapiro's March 14, 2006 report noted that Plaintiff complained of side effects from the medication Reglan, including sleepiness and jitteriness. (*Id.* at 345.) Plaintiff also complained of leg and abdominal pain, decreased energy, headaches and blurry vision. (*Id.* at 340.)

## 2. Physical Residual Functional Capacity Assessment/Medical Source Statements

On November 17, 2006, Dr. Gillette completed a Residual Functional Capacity ("RFC") assessment for Plaintiff. According to this evaluation, Plaintiff could occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds. The RFC assessment also indicated that Plaintiff could stand and/or walk for a total of about 6 hours and sit for a total of about 6 hours in an 8-hour workday. The RFC assessment stated that the symptoms of pain and fatigue were attributable to diabetes and neuropathy and noted that the severity of the symptoms and their effects on function were "partially consistent" with the total medical and nonmedical evidence. (AR 396, 400.) On November 1, 2007, Dr. Golish indicated that the additional medical evidence of record did "not significantly change the prior rating." (*Id.* at 262.)

Additionally, a Diabetes Mellitus Residual Functional Capacity Questionnaire (the "Questionnaire"), based on medical visits through November 6, 2008, provided a guarded prognosis and stated that Plaintiff was capable of low stress jobs.[3] The Questionnaire noted that Plaintiff was not a malingerer and that no emotional factors contributed to the severity of symptoms. The Questionnaire indicated that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations. Moreover, the Questionnaire stated that Plaintiff's experience of pain or other symptoms were severe enough to frequently interfere with attention and concentration needed to perform even simple work tasks. Furthermore, the Questionnaire

---

[3] This Questionnaire was not dated or signed.

mentioned that when Plaintiff required a break, he needed to sit quietly. Nonetheless, according to the Questionnaire, Plaintiff's legs did not need to be elevated with prolonged sitting. (*Id.* at 420-22.)

On February 23, 2009, Dr. Mehta submitted a Medical Source Statement (MSS) concerning the nature and severity of Plaintiff's physical impairment ("Dr. Mehta's 2009 MSS"). Dr. Mehta concluded that Plaintiff was not capable of performing sustained light work on a regular and continuing basis. Dr. Mehta did not specify whether Plaintiff was capable of performing sustained sedentary work. In addition, Dr. Mehta did not provide a "date of onset." Dr. Mehta indicated that Plaintiff could sit, stand, and/or walk for 2 hours at one time as well as during the entire 8-hour workday. Dr. Mehta also opined that Plaintiff could lift and/or carry up to 5 pounds during an 8-hour workday. (*Id.* at 435-40.)

Dr. Fechner, however, held a different opinion regarding Plaintiff's physical impairments. On April 8, 2009, Dr. Fechner submitted his written answers to Medical Interrogatory Physical Impairments (the "Medical Interrogatory") and a Medical Source Statement ("Dr. Fechner's 2009 MSS"). In the Medical Interrogatory, he concluded that Plaintiff's impairments did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listing of Impairments"). He also stated that Plaintiff's impairments resulted in light work restrictions. To support his opinion, he cited multiple medical records. (*Id.* at 441-43.) In the MSS, he noted that Plaintiff could occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds. He also indicated that Plaintiff could, at one time without interruption, sit for 2 hours and stand and/or walk for 1 hour. According to Dr. Fechner, Plaintiff could sit, stand, and/or walk for 6 hours during an entire 8-hour workday. He further added that Plaintiff could sit for 8 hours with appropriate breaks in an 8-hour workday.

5

He also answered "yes" to a question as to whether the limitations lasted or would last for 12 consecutive months. (*Id.* at 444-45.)

Two years later, on March 29, 2011, Dr. Mehta submitted another Medical Source Statement. ("Dr. Mehta's 2011 MSS"). This time Dr. Mehta used the same form that Dr. Fechner did on April 8, 2009. Dr. Mehta's conclusions, however, were very different than Dr. Fechner's 2009 conclusions. Dr. Mehta noted that Plaintiff could occasionally lift and/or carry up to 10 pounds rather than the 20 pounds reflected in Dr. Fechner's MSS. Dr. Mehta also indicated that Plaintiff could sit, stand and/or walk for only 10 minutes at one time without interruption, instead of 2 hours for sitting and 1 hour for standing and/or walking as concluded by Dr. Fechner. According to Dr. Mehta, even during an entire 8-hour workday, Plaintiff still could sit, stand, and/or walk only for 10 minutes rather than the 6 hours reflected in Dr. Fechner's MSS. Dr. Mehta further noted that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces and could not use standard public transportation. Dr. Mehta did not answer the question as to whether the limitations lasted or would last for 12 consecutive months. (*Id.* at 450-55.)

On May 25, 2011, Dr. Fechner testified at the supplementary hearing. During the hearing, he provided testimony consistent with his April 8, 2009 RFC assessment. (PageID 54.)

## C.  **Procedural History**

The ALJ held the first hearing on March 30, 2009. During the hearing, Plaintiff complained of the pain in his legs and feet. (*Id.* at 92.) Plaintiff also complained that his biggest problem was that he could not sleep at night. He claimed that due to his kidney problem, he had to keep running to the bathroom eight or nine times a night. According to Plaintiff, as a result, he felt very tired during the day and could not walk for more than 25 minutes. (*Id.* at 81-82, 94, 96.) He also complained that his medication, Crestor, had serious side effects which "[drove him]

6

crazy." (*Id.* at 95.) Additionally, he testified that he could lift about 20 pounds, but would get tired quickly. (*Id.* at 97.)

On May 29, 2009, the ALJ issued a decision finding that Plaintiff was not disabled. On February 11, 2011, the Appeals Council issued an Order of Remand. In the Order of Remand, the Appeals Council directed the ALJ to offer Plaintiff the opportunity for a supplementary hearing to interrogate the medical expert, further evaluate Plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529 and Social Security Rulings (SSR) 96-7p, and give further consideration to Plaintiff's maximum RFC in accordance with 20 C.F.R. § 404.1545 and SSR 96-8p. (*Id.* at 113-14.)

On May 25, 2011, pursuant to the Appeals Council's Order of Remand, the ALJ conducted a supplementary administrative hearing. Both Plaintiff and Dr. Fechner appeared and testified at the hearing. During the hearing, the ALJ allowed Plaintiff to discuss his limitations to make sure that Dr. Fechner was aware of them. (PageID 48.) The ALJ also allowed Plaintiff to present Dr. Mehta's 2011 MSS. (*Id.* at 49.)

During the hearing, Plaintiff complained that all of his medications made him drowsy and, consequently, he was diagnosed with sleep apnea three or four months previously. The ALJ then questioned Plaintiff about the sleep study to treat his sleep apnea. (*Id.* at 55-56.) Plaintiff also complained that during the night, he had to get up eight or ten times on average to urinate. (*Id.* at 56.)

Moreover, Plaintiff stated that he could not stand for 10 minutes, not even in an 8-hour day. The ALJ then pointed out that during the 2009 hearing, Plaintiff testified that he could stand for 20 to 25 minutes. Plaintiff explained that his conditions were getting worse. (*Id.* at 57-58.) The ALJ explained that he was interested in Plaintiff's conditions through his DLI. (*Id.* at 58.)

Plaintiff claimed that when he stopped working, around 2003, he could not stand for two hours, but subsequently changed his answer to about 45 minutes. (*Id.* at 59-61.) The ALJ then asked Plaintiff how much he could lift in 2007. Plaintiff answered that he could lift about 20 pounds back then. (*Id.* at 62.)

Regarding Plaintiff's renal function, the ALJ confirmed with Plaintiff that when Plaintiff was waiting for a kidney transplant, his renal function became stable. (*Id.*) Plaintiff again claimed that his conditions were recently deteriorating. Additionally, the ALJ pointed out that Plaintiff's treating doctor declined to complete a RFC assessment. (*Id.* at 63.)

Before Dr. Fechner's testimony, Plaintiff consented to Dr. Fechner's qualifications. During the hearing, Dr. Fechner stated that based on his review of Plaintiff's medical evidence and Plaintiff's testimony, Plaintiff's conditions did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. (*Id.* at 64-65.)

Dr. Fechner then listed Plaintiff's diagnoses and symptoms from Plaintiff's medical records. (*Id.* at 65-67.) He concluded that he would not change his 2009 RFC assessment that Plaintiff's RFC was limited to light work activity. (*Id.* at 67, 68.) Dr. Fechner stated that Plaintiff's testimony at the hearing was not even close to the DLI and, therefore, would be irrelevant to his conclusion. (*Id.* at 67.) Dr. Fechner also clarified that although his RFC assessment was based on medical conditions in 2009, his RFC assessment as of the DLI would have to be the same because Plaintiff's hemoglobin improved after 2005 and remained normal. (*Id.* at 68, 69, 70.)

Dr. Fechner, however, mentioned that his RFC assessment would be sedentary for Plaintiff's condition on July 1, 2005 based on Plaintiff's hemoglobin value on that day. Nevertheless, according to Dr. Fechner, Plaintiff's hemoglobin went back to normal in

December 2005 and improved after 2005. (*Id.* at 69-70.) The ALJ later added that he did not find it significant whether Plaintiff's conditions met the Listing of Impairments *at one time* in the past six years. (*Id.* at 84.)

Dr. Fechner then commented on Dr. Mehta's 2009 MSS. Dr. Fechner questioned Dr. Mehta's conclusion that Plaintiff could stand for 2 hours at one time and the same length of time during an 8-hour day. Dr. Fechner stated that such a conclusion made "no sense" to him. Therefore, he could not give much weight to Dr. Mehta's findings. (*Id.* at 75-76.)

## II.    THE ALJ'S DECISION

After the supplementary hearing, in a written decision dated June 20, 2011, the ALJ denied Plaintiff's claim for benefits, concluding that Plaintiff had not been under a disability within the meaning of the Social Security Act from January 1, 2003, the alleged onset date, through December 31, 2007, the date last insured. (AR 11, 18.)

As an initial matter, the ALJ noted an issue as to whether the insured status requirements of sections 216(i) and 223(d) of the Social Security Act were met, stating that Plaintiff's earning records showed that he acquired sufficient quarters of coverage to remain insured through December 31, 2007, the date last insured. (*Id.* at 10.) The ALJ then set forth the legal standard and proceeded to the five-step sequential analysis. (*Id.* at 11-19.)

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from January 1, 2003, his alleged onset date, through December 31, 2007, his date last insured pursuant to 20 C.F.R. § 404.1571 *et seq.* (*Id.* at 12.) At Step Two, the ALJ determined that through the date last insured, Plaintiff had the following severe impairments: insulin-dependent diabetes mellitus, diabetic peripheral neuropathy, diabetic retinopathy, hypertensive vascular disease, chronic anemia, chronic renal failure, and

gastroesophageal reflux disease. (*Id.*) At Step Three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (*Id.*) In making this determination, the ALJ adopted and incorporated Dr. Fechner's written answers to interrogatories dated April 8, 2009. (*Id.* at 13.)

The ALJ found that Plaintiff had "the residual functional capacity to perform the full range of light work as defined in 20 [C.F.R.] § 404.1567(b)." (*Id.*) In making this finding, the ALJ stated that he had considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. (*Id.*) The ALJ stated that he had also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 96-3p. (*Id.*)

In considering Plaintiff's symptoms, the ALJ followed a two-step process pursuant to 20 C.F.R. § 404.1529 and SSR 96-7p. The ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (*Id.* at 14.) The ALJ then found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessments. (*Id.*)

In making his determinations, the ALJ considered Plaintiff's medical records. In terms of Plaintiff's alleged endocrine impairment and other relevant symptoms, the ALJ found that the medical records indicated that Plaintiff's most recent fasting blood sugar reading was essentially within normal limits; Plaintiff's most recent visual acuity reading in both eyes was 20/40; the range of motion of Plaintiff's lower extremities was normal and motor strength in both of his

lower extremities was normal. Moreover, the ALJ mentioned that Plaintiff did not complain of leg pain during his consultative internist's examination on August 29, 2007. (*Id.*)

In connection with Plaintiff's history of hypertension, the ALJ found that the preponderance of evidence, i.e. medical reports, indicated that Plaintiff's blood pressure was well controlled and his EKG tests were within normal limits. (*Id.*) The ALJ also noted that Plaintiff had not sought or required frequent hospital emergency visits, etc. (*Id.*)

Regarding Plaintiff's impaired renal function, the ALJ noted that Plaintiff secured "possible placement on a kidney transplant list" following an evaluation on August 6, 2006. (*Id.* at 14-15.) Nonetheless, Dr. Mehta's medical report, covering treatment from September 8, 2008 to February 2, 2009, indicated that Plaintiff's renal function was stable and his anemia had improved. (*Id.* at 15.)

Regarding Plaintiff's complaint of epigastric distress with symptoms, the ALJ found that based on Dr. Shapiro's medical reports, Plaintiff's symptoms had largely abated. (*Id.*) Moreover, the ALJ noted that Plaintiff did not complain of epigastric discomfort or abdominal symptoms during Dr. Merlin's consultative examination on August 29, 2007. (*Id.*)

In connection with the remand proceedings, Plaintiff's attorney submitted new evidence, including Dr. Mehta's medical reports from March 2008 to January 2011 and his 2011 MSS. (*Id.*) After reviewing the medical reports, the ALJ concluded that Plaintiff's renal disorder was essentially clinically stable and asymptomatic from March 2008 to January 2011, but later worsened. (*Id.* at 16.) Nevertheless, the ALJ found that these reports related to Plaintiff's medical conditions during the 3-year period after the DLI and, therefore, had no direct bearing upon Plaintiff's capacity for light work activity from the alleged onset date through the DLI. (*Id.*)

The ALJ also discussed Dr. Mehta's 2009 and 2011 MSSs. (*Id.*) Both statements concluded that Plaintiff was unable to perform a full range of even sedentary work. (*Id.*) The ALJ rejected both statements and found that they had little or no probative weight. (*Id.*) First, the ALJ found that Dr. Mehta's relatively benign statements and findings in her other medical reports did not support either MSS. (*Id.*) Second, the ALJ found that both statements were inconsistent with Plaintiff's testimony at the supplementary hearing. Dr. Mehta's MSS stated that Plaintiff could lift only 5 pounds. (*Id.*) In contrast, Plaintiff stated, in the supplementary hearing, that he could lift 20 pounds in 2007, although he could not carry it for too long. (*Id.*) Accordingly, the ALJ found that Plaintiff's testimony actually supported the conclusion that Plaintiff retained RFC to engage in light work activity. (*Id.*) The ALJ further noted that Plaintiff's treating nephrologist had declined to complete a RFC assessment. (*Id.*)

The ALJ then discussed Dr. Fechner's written answers to medical interrogatories and his testimony at the supplementary hearing. (*Id.* at 16-17.) The ALJ adopted and concurred with Dr. Fechner's determination regarding Plaintiff's ability to engage in a full range of light work, finding that Dr. Fechner's findings were supported by a detailed analysis of Plaintiff's medical impairments and were consistent with the preponderance of medical evidence in the record. (*Id.* at 17.) Consequently, the ALJ found that Plaintiff's maximum RFC was limited to light work activity. (*Id.*)

After the ALJ determined Plaintiff's RFC, he proceeded to Step Four of the analysis. (*Id.*) At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work. (*Id.*) As such, the ALJ proceeded to Step Five of the analysis. (*Id.*) At Step Five, the ALJ noted that on the date last insured, Plaintiff was 51 years old, which is defined as a "person closely approaching advanced age" (age 50-54), according to 20 C.F.R. § 404.1563. (*Id.*) The ALJ stated

that Plaintiff had at least a high school education and was able to communicate in English. (*Id.* at 18.) The ALJ next found that the transferability of job skills was not material to the determination of disability because applying the Medical-Vocational Rules directly on the alleged onset date (January 1, 2003) supported a finding of "not disabled," whether or not Plaintiff had transferable job skills. (*Id.*) The ALJ then found that through the date last insured, considering Plaintiff's age, education, work experience, and RFC for the full range of light work, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*) Therefore, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from January 1, 2003, the alleged onset date, through December 31, 2007, the last day insured. (*Id.* at 18-19.)

## III. LEGAL STANDARDS AND ANALYSIS

### A. Standard of Review

When reviewing the final decision of the Commissioner of the Social Security Administration, a district court "shall have [the] power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). A reviewing court must uphold the final decision of the Commissioner if it is supported by "substantial" evidence. 42 U.S.C. § 405(g). For evidence to be deemed "substantial," it must be more than a "mere scintilla" but it may be less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

13

The reviewing court must review the evidence in its entirety. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As part of the review, the court "must take into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotation and citation omitted). "[W]here there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479. Notably, access to the Commissioner's reasoning is essential to meaningful court review:

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal citation and quotation omitted). Nevertheless, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### B.  Establishing Disability

In order to be eligible for DIB, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

14

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. At the first step, the claimant must establish that he has not engaged in any "substantial gainful activity" since the onset of his alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the claimant must establish that he suffers from a "severe medically determinable physical or mental impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the first two steps are satisfied, the third step requires that the claimant provide evidence that his impairment is equal to one of those impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). Furthermore, if the claimant demonstrates that he suffers from a listed impairment or that his severe impairment is equal to a listed impairment, he is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If he cannot so demonstrate, the eligibility analysis proceeds to step four.

The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits him to resume his previous employment. 20 C.F.R. § 404.1520(e). If the claimant can perform his previous line of work, then he is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(f). If the claimant is unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with his medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g); *see Palmer v. Comm'r of Soc. Sec.*, 410 F. App'x

490, 492 (3d Cir. 2011). If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits.

## C. Discussion

### 1. The ALJ properly determined Plaintiff's onset date.

Plaintiff argues that the ALJ erred in determining Plaintiff's onset date in violation of *Newell v. Commissioner of Social Security* and SSR 83-20. (Pl.'s Moving Br. 2, 6-8 (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003)).) In Plaintiff's application for DIB on April 20, 2006, he alleged that his disability started on January 1, 2003. (AR 115.) The ALJ accepted this alleged onset date and applied it in his decision. (*Id.* at 11-12.) Because there was no dispute about the onset date throughout the proceedings, the Court does not find error on the ALJ's part as to this issue.

### 2. The ALJ properly weighed Dr. Mehta's opinion regarding Plaintiff's RFC.

Plaintiff argues that the ALJ failed to explain his rationale to give reduced weight to Dr. Mehta's opinion regarding Plaintiff's RFC. (Pl.'s Moving Br. 9.) According to Plaintiff, the ALJ did not state how Dr. Mehta's opinion was inconsistent with the objective medical evidence. (*Id.* at 8.) Plaintiff asserts that the ALJ disregarded Dr. Mehta's opinion based solely on the ALJ's own impression gleaned from the record and his evaluation of Plaintiff's credibility. (*Id.* at 10.) Plaintiff further asserts that the ALJ failed to cite any contradictory medical evidence but rather simply reached a different conclusion based on his own lay review of the evidence. (*Id.*) According to Plaintiff, the ALJ did not point to one piece of medical evidence that contradicted Dr. Mehta's statements and findings. (*Id.*)

A treating source's opinion on the issue of the nature and severity of an individual's impairment will be given controlling weight if the opinion is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d); SSR 96-2p; *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 (3d Cir. 2008). The ALJ, however, was entitled to discount this opinion, as it was inconsistent with other evidence of record. *See Sherrod v. Barnhart*, No. Civ. A.01-4731, 2002 WL 32350551, at *5 (E.D. Pa. July 31, 2002) (giving little weight to treating doctor's opinion because it was inconsistent with the record as a whole).

Like *Sherrod*, Dr. Mehta's opinion of Plaintiff's RFC was inconsistent with other evidence of record. First, Dr. Mehta's opinion of Plaintiff's RFC was inconsistent with his own medical reports. According to both Dr. Mehta's 2009 and 2011 MSSs, Plaintiff's RFC will not allow him to perform even sedentary work activity. (AR 17.) On the other hand, the ALJ noted that Dr. Mehta's medical reports concerning Plaintiff's visits from March 2008 to November 2009 indicated that Plaintiff exhibited clinically stable renal function, his anemia had improved, he had a normal ischemic heart disease work up, his left ventricular ejection fraction was normal, he denied any new symptoms, and his blood pressure was under control. (*Id.* at 15.) Moreover, in connection with Plaintiff's office visits from September 2010 to January 2011, Dr. Mehta reported that Plaintiff was feeling okay and that he had no new symptoms. (*Id.*) Only in Plaintiff's visit on February 9, 2011, more than 3 years after Plaintiff's date last insured, did Dr. Mehta state that Plaintiff's chronic renal failure was progressively worsening. (*Id.*) As such, Dr. Mehta's medical reports are inconsistent with his RFC assessments. Therefore, the ALJ had a reasonable basis to discount Dr. Mehta's medical source statements because they were inconsistent with Dr. Mehta's own treatment notes.

Second, the ALJ noted that Dr. Mehta's assessments were inconsistent with Plaintiff's own account of his abilities. The ALJ noted that at the supplementary hearing, Plaintiff stated

that he was capable of lifting 20 pounds during the relevant time period, while Dr. Mehta's medical source statement concluded that Plaintiff could lift only 5 pounds. (*Id.* at 16.) Therefore, the ALJ also had a reasonable basis upon which to conclude that Plaintiff's testimony not only contradicted Dr. Mehta's medical source statements, but supported the RFC to engage in light work activity.

Finally, the ALJ found that Dr. Mehta's assessments were inconsistent with other doctors' RFC assessments. The ALJ noted that Dr. Fechner concluded in his written answers to interrogatories and in his supplementary hearing testimony that Plaintiff had the capacity to engage in a full range of light work. (*Id.* at 17.) The ALJ adopted and concurred with Dr. Fechner, finding that Dr. Fechner's conclusion was supported by a detailed analysis of Plaintiff's medical impairments and was consistent with the preponderance of medical evidence in the record. (*Id.*)

As such, Plaintiff's claim that the ALJ did not cite any contradictory evidence is belied by the ALJ's decision. Here, the ALJ's decision clearly referenced evidence that was inconsistent with Dr. Mehta's RFC assessments, including Dr. Mehta's medical reports, Plaintiff's testimony, and another doctor's assessment. Accordingly, the Court finds that the ALJ properly weighed Dr. Mehta's assessments.

### 3. The ALJ's evaluation of Plaintiff's subjective complaints requires further analysis.

Plaintiff argues that the ALJ failed to properly consider all of the regulatory factors in assessing Plaintiff's credibility. (Pl.'s Moving Br. 10.) Plaintiff further asserts that the ALJ's finding that Plaintiff was not totally credible is not based on substantial evidence. (*Id.* at 10-11.) According to Plaintiff, the ALJ should give great weight to Plaintiff's subjective testimony of his inability to perform even light or sedentary work when his testimony is supported by competent

18

medical evidence. (*Id.* at 11.) Plaintiff asserts that the ALJ did not cite any evidence to support his credibility findings. (*Id.* at 12.) Plaintiff further argues that even if the ALJ cites any of Plaintiff's activities, Plaintiff's limited daily activities cannot disprove his disability. (*Id.*)

In considering Plaintiff's symptoms, the ALJ must follow a two-step process pursuant to 20 C.F.R. § 404.1529 and SSR 96-7p. First, ALJ must determine whether any underlying medically determinable physical or mental impairment(s) could reasonably be expected to produce Plaintiff's pain or other symptoms. SSR 96-7p. Second, once an underlying medically determinable physical or mental impairment(s) has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functioning. *Id.* For this purpose, whenever Plaintiff's statements are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of Plaintiff's statements based on a consideration of the entire case record. *Id.*

An ALJ must give "serious consideration" to a claimant's subjective complaints. *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002). Nevertheless, the "ALJ has discretion to evaluate the credibility of a claimant and . . . arrive at an independent judgment, in light of [the] medical findings and other evidence, regarding the true extent of the pain alleged." *Cerrato v. Comm'r of Soc. Sec.*, 386 F. App'x 283, 286 (3d Cir. 2010) (internal citations omitted). An ALJ's credibility determination is a finding of fact, which a court is bound by if the finding is "supported by substantial evidence in the record." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In reaching a decision, the ALJ can give credit to portions of the evidence before him, but "cannot reject evidence for no reason or for the wrong reason." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Furthermore, the Third Circuit standard provides that: (1) subjective complaints of pain must be seriously considered, even where not fully confirmed by objective medical evidence; (2) subjective pain "may support a claim for disability benefits;" (3) when such complaints are supported by medical evidence, they should be given great weight; and finally (4) where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount a claimant's pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971); *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981); *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d Cir. 1984)).

During the 2009 hearing, Plaintiff complained about the pain in his legs and feet. (AR 92.) He also mentioned his frequent bathroom visits to urinate due to his kidney problems. He claimed that as a result, he felt tired during the day and could not walk for more than 25 minutes. (*Id.* at 81-82, 94, 96.) He also complained that his medication, Crestor, had serious side effects which "[drove him] crazy." (*Id.* at 95.)

Following the two-step process to consider Plaintiff's symptoms, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 14.) Second, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessments. (*Id.*)

After careful review and consideration of the ALJ's decision, the Court finds that it must remand because the ALJ's findings did not include sufficient analysis regarding Plaintiff's subjective complaints. Notably, in its remand, the Appeals Council instructed the ALJ to "[f]urther evaluate the claimant's subjective complaints and provide rationale in accordance with

the disability regulations pertaining to evaluation of symptoms (20 [C.F.R.] 404.1529) and Social Security Ruling 96-7p." (*Id.* at 114.) Specifically, the Appeals Council required the ALJ to "consider the following factors in evaluating the intensity, persistence and limiting effects of the alleged symptoms: prior work record; daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; and the type, dosage, effectiveness and side effects of medication." (*Id.* at 113.)

The ALJ, however, did not sufficiently analyze and explain the weight he afforded to Plaintiff's subjective complaints of pain, fatigue and the other limiting effects of Plaintiff's alleged symptoms, even though Plaintiff's medically-supported impairments could reasonably be expected to produce the symptoms alleged. (*Id.* at 14.) Based on the analysis contained in the ALJ's decision, the Court is not able to perform a meaningful review as to the credibility issue.

The ALJ's analysis focused mainly on medical reports, such as Plaintiff's fasting blood sugar reading within normal limits, Plaintiff's EKG tests within normal limits, Plaintiff's medical reports indicating his stable renal function, etc. (*Id.* at 13-17.) Additionally, the ALJ's Opinion mentioned that Plaintiff did not complain of leg pain, epigastric discomfort, or abdominal symptoms during his consultative internist's examinations. (*Id.* at 14, 15.) Nevertheless, the decision did not adequately analyze the factors listed under 20 C.F.R. § 404.1529(c)(3) and SSR 96-7p, including: Plaintiff's limited daily activities; any precipitating and aggravating factors; side effects of any medications taken by Plaintiff; and any other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms.

Accordingly, the ALJ's Opinion did not provide sufficient analysis for the Court to find that the credibility finding was supported by substantial evidence. Therefore, the Court remands the case for further proceedings consistent with this Opinion. On remand, the ALJ should explain

21

how he arrived at his determination regarding Plaintiff's credibility. Furthermore, the ALJ must set forth the evidence he accepts and rejects related to Plaintiff's subjective complaints and specifically provide his reasoning and analysis based on the evidence in the record.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the case is remanded for further proceedings consistent with this Opinion. An appropriate Order accompanies this Opinion.

_____s/ Michael A. Shipp_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

<u>Dated:</u>  October 31, 2013